**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Marvin P. JONES, Defendant–Appellant.**

**No. 93–8729.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 30, 1994.

Andrew Allen Taylor, St. Marys, GA, for appellant.

Lawrence B. Lee, Asst. U.S. Atty., Savannah, GA, for appellee.

Before ANDERSON and BIRCH, Circuit Judges, and ALBRITTON *, District Judge.

ALBRITTON, District Judge:

Appellant Marvin P. Jones ("Jones") appeals the district court's grant of summary judgment in favor of appellee the United States of America ("the Government"). Summary judgment was based on the finding that Jones, a physician practicing in a rural area following graduation from medical school on a National Health Service Corps ("NHSC") scholarship, was terminated by Westside Urban Health Center ("Westside"), the entity with which Jones was fulfilling his obligation under his scholarship, because of a salary dispute which included his refusal to work unless he received a higher salary. The district court concluded that under the terms of the practice agreement in question the Government had no obligation to reassign Jones to another facility and was entitled to reimbursement of scholarship funds, because Jones' refusal to work constituted a breach of the agreement. In reaching this conclusion, the district court relied upon the findings of fact and references to testimony within a federal court order entered by a different district judge in another lawsuit involving Jones. For the reasons that follow, we vacate the judgment of the district court and remand this case for further proceedings.

---

[1] Honorable W. Harold Albritton, III, U.S. District Judge for the Middle District of Alabama, sitting by designation.

## I. BACKGROUND

In 1980, Jones applied for and received a scholarship/loan from the NHSC scholarship program [1] to assist him in attending medical school at the Medical College of Georgia. From 1980 through 1984, he received funds totaling $33,543.50, which covered tuition, fees, and other costs. After finishing medical school, Jones was granted a three-year deferment of his repayments so that he could pursue a residency in internal medicine.

In 1987, Jones entered into a "Private Practice Assignment Agreement" ("the Agreement") with the United States Department of Health and Human Services. Under the Agreement, he promised to serve as a physician for four years, from July 8, 1987 to July 7, 1991, at Westside in Savannah, Georgia in return for a write-off of his debt to the NHSC. The Agreement provided that in the event provided that in the event Jones failed to satisfy his service requirement, he would have to pay up to three times the amount owed, less credit for partial service performed.

The Agreement provides in relevant part: If this assignment is terminated by the Entity [Westside] or the NHSC prior to the expiration of the period specified in this agreement, the Individual will be reassigned to another entity for the remaining period of his or her scholarship service obligation unless the termination is due to the Individual's failure to fulfill the employment requirements of the Entity or the requirements of the Private Practice Assignment. Termination by the Individual or termination due to the Individual's failure to fulfill the employment requirements of the Entity or the requirements of the Private Practice Assignment will subject the Individual to the financial repayment provisions described in paragraph 4. R–1–13–D–1. The formula for calculating the amount owed in the event of breach is set forth at 42 U.S.C. § 254o (b)(1).

In June 1990, Jones was terminated by Westside after serving three years of his obligation. Shortly after his termination, a NHSC official contacted Jones by telephone, and inquired whether he needed assistance in relocating to another site. At this time Jones was engaged in a suit against Westside and referred the official to his attorney.[2] In a letter dated December 20, 1990, Jones was notified that he was in default of his obligation to the NHSC.

On September 3, 1992, the Government filed suit in federal district court to recover the outstanding loans made to Jones. Subsequently, it filed a motion for summary judgment arguing that it was not obligated to reassign Jones to another hospital because he was dismissed due to poor attendance and interpersonal difficulties, which constituted a failure to fulfill Westside's "employment requirements." In support of its motion, the Government submitted a certified copy of an order dated June 5, 1991 issued by United States District Judge Anthony A. Alaimo in Jones' action against Westside. *Jones v. Westside–Urban Health Center, Inc.*, 771 F.Supp. 359 (S.D.Ga.1991) (official reporter citation).[3] On May 3, 1993, the district court granted the Government's motion.[4] This appeal followed.

---

1. In 1976, Congress established the NHSC scholarship program ("the program") in order to address the maldistribution of health care professionals in the United States. *See* 42 U.S.C. §§ 254d–254e. Under the program, a student pursuing a professional health degree may receive a scholarship in exchange for the student's agreement to serve in a health manpower shortage area. 42 U.S.C. §§ 254*l* (b)(4), 254*l* (e). The student must serve one year for each year that the student receives a scholarship. 42 U.S.C. § 254*l* (f)(B)(iv).

2. Jones filed suit against Westside under the Equal Pay Act of 1963, 29 U.S.C. §§ 206 and 215(a)(3), alleging sex discrimination and retaliatory discharge. A jury subsequently found for Westside on both claims.

3. Judge Alaimo's order addressed Jones' motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. It concluded that Jones' attendance and interpersonal problems were the reasons for his termination. *Jones*, 771 F.Supp. at 361.

The district court noted that it was not aware of any special interrogatories by Judge Alaimo to the jury requiring it to find the specific reason Jones was fired.

4. The district court awarded the Government $64,691.08, plus lawful prejudgment interest.

## II. STANDARD OF REVIEW

We review *de novo* the district court's order granting summary judgment. *Sturniolo v. Sheaffer, Eaton, Inc.*, 15 F.3d 1023, 1024 (11th Cir.1994) (citations omitted); *National Broadcasting Co. v. Satellite Broadcast Networks*, 940 F.2d 1467, 1469 (11th Cir.1991).

## III. DISCUSSION

A motion for summary judgment may be granted only if no genuine dispute remains as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment may be based on any evidence which would be admissible at trial. *Cash Inn of Dade, Inc. v. Metropolitan Dade County*, 938 F.2d 1239, 1242 (11th Cir.1991) (citations omitted); *Property Management & Investments, Inc. v. Lewis*, 752 F.2d 599, 604 n. 4 (11th Cir. 1985) (citation omitted). *See* Fed.R.Civ.P. 59(e).

In the instant case, the district court determined that Westside terminated Jones because of a salary dispute. In support of this conclusion, the court referred to Jones' own contention that the chief reason for his dismissal was a salary dispute; Westside's letter to Jones citing the salary dispute as the basis for his dismissal; and Judge Alaimo's order. The district court noted that Judge Alaimo's findings alone "strongly indicate that Dr. Jones indeed 'failed to fulfill the employment requirements of Westside.'"

The district court held that Jones' refusal to work, unless he received a higher salary,

constituted a breach of the Agreement and therefore the Government was not obligated to reassign him upon termination of the assignment by Westside. It found that under the Agreement Jones was obligated to serve under Westside's standard compensation plan and was not entitled to negotiate his salary.[5]

At oral arguments, the Government conceded that the Agreement did not preclude Jones from requesting an increase in salary. Thus, a "salary dispute" in and of itself did not constitute either a breach of the Agreement or violation of Westside's "employment requirements." Accordingly, in order for the district court to find that Jones' termination because of the salary dispute constituted either a breach of the Agreement or termination for violation of Westside's "employment requirements," it would have had to have reviewed evidence establishing the precise nature of the salary dispute, i.e., did Jones merely request a raise or did he refuse to work unless he received a raise. The only evidence before the district court which provided insight into the nature of the salary dispute was Judge Alaimo's order.

Jones contends that the findings of fact and references to witnesses' testimony contained in Judge Alaimo's order were inadmissable and therefore a genuine issue of fact exists as to whether the Government was obligated under the Agreement to reassign him to another health care facility.[6] In response, the Government argues that the portions of the order in question are admissible under Fed.R.Evid. 201 & 803(8).[7]

---

This amount is the sum of the principal owed, $25,691.42, plus interest of $39,098.66.

5. At oral arguments, Jones' counsel clarified this point by conceding that under the Agreement Jones' minimum salary was to be the amount due a doctor of his experience on the government salary ("GS") scale.

6. Jones did not file a motion to strike Judge Alaimo's order as evidence in support of the motion for summary judgment. However, in a brief filed in the district court in response to the Government's reply brief on the motion for summary judgment, Jones contended that the order was not "factual evidence" demonstrating that he had failed to fulfill Westside's employment

requirements and therefore the Government was obligated to reassign him. R–1–16–2. We find that Jones' argument constituted a challenge to the propriety of the district court considering the order in ruling on the motion for summary judgment.

7. The Government also contends that the order is admissible under Fed.R.Evid. 402. Rule 402 states:

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules proscribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

A. Fed.R.Evid. 201—Judicial Notice

■ Fed.R.Evid. 201(b) provides:

A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

In order for a fact to be judicially noticed under Rule 201(b), indisputability is a prerequisite. 21 C. Wright & K. Graham, *Federal Practice and Procedure: Evidence* § 5104 at 485 (1977 & Supp.1994). Since the effect of taking judicial notice under Rule 201 is to preclude a party from introducing contrary evidence and in effect, directing a verdict against him as to the fact noticed, the fact must be one that only an unreasonable person would insist on disputing. *Id.* If it were permissible for a court to take judicial notice of a fact merely because it has been found to be true in some other action, the doctrine of collateral estoppel would be superfluous. *Id.* at 256–57 (footnote omitted). Moreover, to deprive a party of the right to go to the jury with his evidence where the fact was not indisputable would violate the constitutional guarantee of trial by jury. *Id.* at 485. *Accord United States v. Aluminum Co. of America,* 148 F.2d 416, 446 (2d Cir. 1945) (L. Hand, J.).

■ In *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.,* 969 F.2d 1384, 1388–89 (2d Cir.1992) (citations omitted), the Second Circuit concluded that the district court erred in granting summary judgment based on a finding of fact within a bankruptcy court order. It recognized that a "court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" *Liberty Mut. Ins. Co.,* at 1388 (citation omitted). Accordingly, a court may take notice of another court's order only for the limited purpose of recognizing the "judicial act" that the order represents or the subject matter of the litigation. *See United*

States v. Garland, 991 F.2d 328, 332 (6th Cir.1993) (citation omitted); *Colonial Leasing Co. v. Logistics Control Group Int'l,* 762 F.2d 454, 459 (5th Cir.1985); *St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.,* 605 F.2d 1169, 1172–73 (10th Cir.1979). *See also ITT Rayonier, Inc. v. United States,* 651 F.2d 343, 345 n. 2 (5th Cir.1981) (court took notice of settlement in related proceeding rendering case at bar moot); *Moore v. Estelle,* 526 F.2d 690, 694, 696 (5th Cir.1976), *cert. denied,* 426 U.S. 953, 96 S.Ct. 3180, 49 L.Ed.2d 1192 (1976) (court took notice of prior habeas judgment to identify issues already decided); *FDIC v. O'Flahaven,* 857 F.Supp. 154, 157–58 (D.N.H.1994) (citations omitted) (court could not judicially notice veracity of allegations in affidavits from state court case; rather it could only take notice that the affidavits were filed and the averments were made).

■ In the case at bar, the Government contends that, based on Judge Alaimo's order, it was appropriate for the district court to take judicial notice of the fact that Jones refused to come to work unless he received an increase in salary. A thorough review of the order reveals three references by Judge Alaimo to Jones' attendance: (1) his conclusion that after Jones demanded an increase in salary his attendance problem became substantially worse and that "he all but refused to come to work"; (2) his recollection that nurses from Westside testified that "patients would be turned away because [Jones] had not bothered to show up for work"; and (3) his determination that Jones was fired once it became certain that Jones would not work unless he was paid as much as a more-experienced, more-qualified pediatrician. *Jones,* 771 F.Supp. at 361. Although these findings support Judge Alaimo's denial of the motion before him, they do not indisputably establish that Jones refused to work. Therefore, judicial notice of that fact would be inappropriate.

Because we find that the order is hearsay evidence, its relevance alone is insufficient to establish its admissibility. *See ante,* Section III.B.

**1554**

### B. Fed.R.Evid. 803(8)—Public Records

■ We note at the outset that Judge Alaimo's order, in the context of this case, is hearsay evidence, under Fed.R.Evid. 801(c), and is not admissible unless it falls within one of the exceptions mentioned in the Federal Rules of Evidence. Fed.R.Evid. 802. Rule 803 provides in relevant part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (8) Public Records and Reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (C) in civil actions and proceedings ... factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Fed.R.Evid. 803(8)(C).

In *Nipper v. Snipes,* 7 F.3d 415 (4th Cir. 1993), the court reviewed a case where a district court had allowed plaintiffs' counsel to introduce into evidence an order entered in a state court case involving some of the same parties in the case before it. The order included the state court judge's findings of fact. Portions of the findings of fact were read to the jury. The Fourth Circuit concluded that judicial findings of fact in a court's order in a previous case are not admissible in another case under Rule 803(8)(C). *Snipes,* 7 F.3d at 418. We agree.

First, the plain language of Rule 803(8)(C) does not apply to judicial findings of fact. It applies to "factual findings resulting from an investigation made pursuant to authority granted by law." Fed.R.Evid. 803(8)(C). Indeed, a review of the advisory committee note to Rule 803 reveals that the drafters intended this portion of the rule to apply to findings of agencies and offices of the executive branch. *See Snipes,* 7 F.3d at 417 (citations omitted); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 505 F.Supp. 1125, 1185 (E.D.Pa.1980) ("[A] review of the advisory committee note makes it clear that judicial findings are not encompassed; not only

is there not the remotest reference to judicial findings, but there is a specific focus on the findings of officials and agencies within the executive branch."); Advisory Committee's Note, 56 F.R.D. 183, 311–13.

Next, it is clear that when the drafters of the Federal Rules of Evidence wanted to allow the admission of judgments or their underlying facts, they did so expressly. *See* Fed.R.Evid. 803(22) (previous conviction); Fed.R.Evid. 803(23) (personal, family or general history and boundaries).

Finally, we note that at common law a judgment from another case would not be admissible. *Nipper,* 7 F.3d at 417 (*citing* 5 John H. Wigmore, *Wigmore on Evidence* § 1671a (James H. Chadbourn rev. 1974); 1 *McCormick on Evidence* § 298 (John W. Strong ed., 4th ed. 1992); 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 803(22)[01] (1993)).

Therefore, in the case *sub judice,* the findings of fact and references to testimony in Judge Alaimo's order were not admissible evidence and should not have been considered by the district court.

### IV. CONCLUSION

■ The district court erred in granting the Government's motion for summary judgment because the findings of fact and references to testimony within Judge Alaimo's order upon which it relied were inadmissible evidence and therefore, should not have been considered. The Government did not offer in support of its motion an affidavit saying that Jones refused to work without a salary increase or a certified transcript of testimony from the other trial to that effect. The order was the only evidence before the district court which provided any insight into the nature of the "salary dispute" between Jones and Westside. Thus, the district court's conclusion, that by engaging in a "salary dispute" Jones breached the Agreement, constituted an impermissible finding of fact based on inadmissible evidence. Accordingly, we find that, based on the admissible evidence presently before the court, there exists a genuine issue of material fact as to whether the Government was obligated under the

Agreement to reassign Jones to another health care facility.[8]

We, therefore, vacate the grant of summary judgment and remand this case for further proceedings consistent with this opinion.

VACATED and REMANDED.

---

8. The Government also argues that an offer was made to transfer Jones and that Jones failed to accept a transfer, but referred the matter to his attorney, who did not respond. We decline to equate the referral of the matter to his attorney to be a refusal by Jones to accept a transfer. If a transfer was required under the circumstances, the Government could have specifically ordered a transfer.