**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 15, 2014**

# In the Court of Appeals of Georgia

A14A0112. EMORY HEALTHCARE, INC. v. PARDUE.

RAY, Judge.

Vivian Pardue ("Plaintiff"), by and through her daughter Chris Vance as next friend, filed a complaint for premises liability and ordinary negligence against Emory Healthcare, Inc.[1] ("Defendant") for injuries sustained when she slipped and fell on urine on the floor of her room. After the trial court granted the Defendant's motion for summary judgment on the premises liability claim, but denied its motion for summary judgment on Plaintiff's ordinary negligence claim, the case proceeded to a jury trial. Defendant appeals from the jury's verdict in favor of the Plaintiff. On appeal, Defendant argues that the trial court erred by denying its motion for summary

---

[1] Two additional defendants, Wesley Woods Center of Emory University and Wesley Woods Long Term Hospital, Inc. were dismissed from the lawsuit prior to trial.

judgment and its motion for a directed verdict on the grounds that plaintiff's claims sound in medical malpractice, not ordinary negligence. Defendant additionally argues that the trial court erred in failing to take judicial notice of adjudicated facts and in allowing inadmissible evidence. Finding no reversible error, we affirm.

The record reveals that, in April 2007, the 72-year-old Plaintiff was admitted to Wesley Woods' inpatient psychiatric unit to adjust her medications while in an inpatient setting. At the time of her admission, she was documented to have a history of dementia. Upon her admission to the facility, a history was taken, a fall-risk assessment was completed, and various evaluations were performed by Defendant's employees, including nurse Pat Terry. These admission documents noted that Plaintiff had delirium, that her insight and judgment were poor, and that her cognition was impaired. In the "Fall Risk Assessment" and admission history, nurses noted that Plaintiff had several sensory and cognitive impairments, including cataracts, hearing loss, weakness, an unsteady gait and a history of dementia. Terry testified that Plaintiff was deemed to be a fall risk, and that the fall risk precautions provided that the patient be assisted getting out of bed. Terry testified that she was aware of Plaintiff's conditions as noted in the records.

2

In the early morning hours of April 19, 2007, Plaintiff attempted to climb over the raised bed rails to go to the bathroom. Plaintiff's actions triggered a bed alarm in the nursing station. Terry and nursing assistant Daphne Bridges responded to the alarm and went to Plaintiff's room. When they got to the room, they assisted Plaintiff with her slippers and, with one on each side of her, assisted her in walking to the bathroom. As they were walking to the bathroom, Plaintiff urinated on the floor. They then led Plaintiff to the bathroom, sat her on the toilet and told her to stay there while they cleaned up the floor. Terry and Bridges then left the bathroom and went into the patient's room to wipe urine off the floor with bath towels. Nurse Margaret Richards also entered the room and helped to clean the floor. At some point, Bridges and Richards left the room to fetch more towels, leaving Terry alone in the room.

Terry testified that she was bent over, with her back to Plaintiff, cleaning up the urine outside the door of the bathroom when Plaintiff got up, walked across the wet bathroom floor into her room and fell. Terry testified that she did not see Plaintiff get up off the toilet, that she did not see her walk through the bathroom, and that she did not see her fall. After her fall, Plaintiff was transported by ambulance to the emergency room where she was diagnosed with an ankle fracture.

Plaintiff filed suit against Defendant alleging claims of premises liability and ordinary negligence. Defendant moved for summary judgment on plaintiff's negligence claim, arguing that her claims sounded only in professional and not ordinary negligence. Its motion was denied.[2] The trial court then held a bench trial and determined that, although the statute of limitation for a negligence claim had elapsed, Plaintiff was not competent at the time of her injury and, thus, that the statute of limitation as to her negligence claim was tolled pursuant to OCGA § 9-3-90. The case then proceeded to a jury trial on the ordinary negligence claim, and the jury awarded a verdict in favor of the Plaintiff.

1. Defendant contends that the trial court erred in denying its motion for summary judgment and its motion for directed verdict as to Plaintiff's claim for ordinary negligence, arguing that Plaintiff's claim sounds in medical malpractice. Because no expert affidavit was filed pursuant to OCGA § 9-11-9.1 and because the tolling provisions of OCGA § 9-3-90 do not apply to medical malpractice actions, Defendant claims that it was entitled to judgment as a matter of law. We disagree.

---

[2] The trial court granted the Defendants' motion for summary judgment on Plaintiff's claims for premises liability.

4

Simply because a patient's injury occurs in a hospital setting or calls into question the actions of a medical professional does not mean that a suit to recover for that injury is necessarily a "medical malpractice" action. Rather, "[w]e must look to the substance of the action against a medical professional in determining whether the action is one for professional or simple negligence." (Citation and punctuation omitted.) *Brown v. Tift County Hosp. Auth.*, 280 Ga. App. 847, 849 (635 SE2d 184) (2006). "[I]n cases involving a person's fall while in the care of medical professionals, it can be difficult to distinguish professional negligence from ordinary negligence. This distinction is a question of law for the court." (Citations and punctuation omitted.) Id. In such cases, "the distinction between ordinary and professional negligence turns on whether the decision on how to monitor, assist or care for the patient was based on a professional assessment of whether the patient, based on the patient's medical condition, required assistance of some sort." (Citation omitted.) *Chandler v. Opensided MRI of Atlanta, LLC*, 299 Ga. App. 145, 147 (1) (682 SE2d 165) (2009). "If the specific information known to the defendant was such that a jury could determine without the help of expert testimony whether the defendant exercised due care in failing to prevent the patient's fall, the claim sounds in ordinary negligence and no expert affidavit is required." (Citation and punctuation

5

omitted.) Id. See also *Bardo v. Liss*, 273 Ga. App. 103, 104 (1) (614 SE2d 101) (2005) (Where a medical professional's alleged negligence involves "the exercise of professional skill and judgment to comply with a standard of conduct within the professional's area of expertise, the action states professional negligence. But where the allegations of negligence do not involve professional skill and judgment, the action states ordinary negligence") (citations omitted.)

In resolving the issue of whether a medical professional is liable for professional negligence or ordinary negligence, this Court has "focused on the specific information known to the defendant about the victim's condition and about the surrounding circumstances immediately prior to the victim's fall." (Citation omitted.) *Brown*, supra. In *Brown*, this Court held that a complaint could be construed as setting forth ordinary negligence as a basis for recovery when an occupational therapist exited the bathroom where a patient was showering to retrieve a bathrobe even though the patient told the therapist that she was slipping and needed help. Id. at 848-851. Further, the patient's hospital and medical records indicated that the patient was prone to fall and needed "maximum assistance" when being bathed and "significant assistance" when being moved. Id. at 848. Similarly, in *Donson Nursing Facilities v. Dixon*, 176 Ga. App. 700, 700-701 (1) (337 SE2d 351) (1985), this Court

6

held that an ordinary negligence theory was authorized, and thus expert opinion testimony was not required, when there was evidence presented on summary judgment of defendant nursing home's knowledge of decedent's propensities to set fires while smoking and of the failure of the nursing home to exercise any supervision of decedent while smoking. See also *Brown v. Durden*, 195 Ga. App. 340, 340-342 (393 SE2d 450) (1990) (physical precedent only) (action against physician and physician's office staff, based on claim that physician's assistant negligently permitted patient to remain seated and unrestrained on a high examining table, was not a medical malpractice action requiring an expert's affidavit when physician's assistant had been informed that patient had recently suffered from dizziness and nausea following a seizure). Compare *General Hospitals of Humana, Inc. v. Bentley*, 184 Ga. App. 489, 489-491 (361 SE2d 718) (1987) (claim against hospital for negligent failure to supervise 72-year-old patient as he exited bathtub was a professional negligence claim requiring expert testimony as to standard of care, even though patient fell three days after hernia repair surgery, because the "[m]edical condition of the patient was the determinative factor as to the degree of supervision the patient was accorded by the hospital staff," requiring the exercise of medical judgment. In holding that the decision not to supervise the patient while exiting the

7

bathtub was an exercise of medical judgment, this Court indicated that the severity of the patient's medical condition and the duty to supervise had not been established by the evidence).

Here, like the defendants in *Brown v. Tift County Hosp. Auth.*, supra, *Donson*, supra, and *Durden*, supra, it was shown on summary judgment and during trial that the nurses and nursing assistant assisting Plaintiff on the night of her fall were aware of her medical and cognitive conditions and that a duty to supervise her had been established prior to her fall. Plaintiff demonstrated that the nurses and the nursing assistant were aware that she had diminished cognitive condition, and that she had previously been determined to be a fall risk at the time of her fall. The nurses and the nursing assistant nevertheless left Plaintiff unattended in the bathroom, despite the fact that moments before she had been observed trying to get out of her bed by climbing over the side rails, and notwithstanding medical records reflecting that she had a history of dementia, presence of delirium, a history of falls in the previous three months, cognitive impairment, and poor insight and judgment. Under these circumstances, a jury could, without the help of expert testimony, find that the nurses and the nursing assistant failed to exercise ordinary care by leaving Plaintiff unattended in the bathroom while they cleaned her room. See *Brown v. Durden*,

8

supra. (finding that a jury could determine without the help of expert evidence whether the "medical assistant exercised due care in leaving decedent unattended and unrestrained on the examining table after he had been brought to the office suffering from dizziness and nausea following an apparent seizure"). Accord *Brown v. Tift County Hosp. Auth.*, supra. The trial court did not err.

2. Defendant contends that the trial court erred in denying its request to take judicial notice of certain findings of fact and conclusions of law made by the trial court in the portion of its order granting Defendant's summary judgment motion regarding Plaintiff's premises liability claim. Defendant contends that these findings foreclose Plaintiff's alternate claim of ordinary negligence. We disagree.

Defendant first argues that the trial court should have taken judicial notice of the findings in its summary judgment order pursuant to OCGA § 24-8-821. This argument is without merit because that Code Section applies only to "allegations or admissions made in the pleadings" of another party and not to a trial court's order.[3]

Defendant next contends that the trial court should have taken judicial notice of its findings as adjudicative facts under OCGA § 24-2-201. Under this Code

---

[3] OCGA § 24-8-821 provides that "[w]ithout offering the same in evidence, either party may avail himself or herself of allegations or admissions made in the pleadings of another."

9

Section, a trial court may take judicial notice of "a fact which is not subject to reasonable dispute" in that it is "[g]enerally known within the territorial jurisdiction of the court;" or "[c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." It is well settled that "the taking of judicial notice of facts is, as a matter of evidence law, a highly limited process. The reason for this caution is that the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in . . . court." *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir.) (1997) (applying Fed. R. Evid. 201 (b)). Further, "in order for a fact to be judicially noticed . . . indisputability is a prerequisite." (Citation omitted.) *U. S. v. Jones*, 29 F.3d 1549, 1553 (III) (11th Cir.) (1994) (applying Fed. R. Evid. 201 (b)). "Since the effect of taking judicial notice . . . is to preclude a party from introducing contrary evidence and in effect, directing a verdict against him as to the fact noticed, the fact must be one that only an unreasonable person would insist on disputing." (Citation omitted.) Id.

Here, Defendant asked the trial court to take judicial notice of the following findings of fact and conclusions of law made in the trial court's summary judgment order as they related to Plaintiff's claim for premises liability:

10

> Nurse Terry communicated specific information to [Plaintiff, Ms. Pardue,] after seating her on the toilet: "Ms. Pardue, we need you to sit here, we need to clean the urine off the floor for safety, please sit down, stay there." (Terry Depo., p. 49) On her own volition Ms. Pardue got up and walked to the very area she was told to avoid. The hazard was open and obvious. Ms. Pardue had equal knowledge of the hazard, and she failed to exercise ordinary care.

Defendant contends that these findings automatically foreclose Plaintiff's alternate claim for ordinary negligence because of OCGA § 51-11-7, which provides that "[i]f the plaintiff by ordinary care could have avoided the consequences to [herself] caused by the defendant's negligence, [s]he is not entitled to recover." However, this argument is without merit.

Although "[a] trial court may take judicial notice of its own records[,]" (Citations omitted.) *Lee v. State Const. Indus. Licensing Bd. of Ga.*, 205 Ga. App. 497, 497 (1) (423 SE2d 26) (1992), a trial court cannot take judicial notice of matters that are the subject of proof in the case. See *Eubanks v Rabon*, 281 Ga. 708, 711 (3) (642 SE2d 652) (2007) (trial court committed harmless error in taking judicial notice of an increase in the needs of children in a child support modification award because "the question whether there had been an increase in the needs of the children would be a matter of proof if it were placed in issue, it would not be a proper matter for

11

judicial notice") (citations omitted); *Jones*, supra at 1553 (finding that "to deprive a party of the right to go to the jury with his evidence where the fact was not indisputable would violate the constitutional guarantee of trial by jury"). As we noted above, in its analysis of the premises liability claim the trial court found, among other things, that Plaintiff "had equal knowledge of the hazard, and she failed to exercise ordinary care." But in its analysis of the ordinary negligence claim the trial court found that "whether a plaintiff exercised the care that a prudent person in her condition and in the same or similar circumstances would exercise" and if "the plaintiff under the circumstances was so careless for her own safety as to lose her right to recover," were questions for the jury.[4] The trial court's analysis and findings as to the premises liability claim and the ordinary negligence claim may well be inconsistent, but we do not need to decide that question. Rather, the Defendant cannot

---

[4] In denying Defendant's motion to take judicial notice of its summary judgment order the trial court made it clear that it had considered the two claims separately, noting that

> [t]he reason I granted the motion on the premises liability had to do with an equal knowledge analysis. It was my belief that [Plaintiff] had equal, if not . . . greater, but at least equal knowledge [of the hazard]. I was not finding whether or not the nurse's [sic] had any obligations to her with respect to how much supervision she needed on a toilet[.]

12

show by reason of the trial court's order that it was *indisputably* established for purposes of the ordinary negligence claim that Plaintiff failed to exercise care for her own safety. To the contrary, it appears that the trial court intended for the issue of Plaintiff's ordinary care for her own safety to be considered by the jury, thereby leaving the matter in dispute. It follows that the trial court did not err in refusing to take judicial notice of its findings of fact and conclusions of law as to the premises liability claim. See, e.g., *Eubanks*, supra at 711 (3).

3. Defendant next argues that the trial court erred in admitting certain testimony by Plaintiff's daughter, Chris Vance, on the grounds that it constituted inadmissible hearsay. We disagree.

Specifically, Defendant argues that the trial court erred in allowing Chris Vance, over its objection, to testify that she spoke with a nurse employed by the Defendant named "Pat" the morning after her mother's fall.[5] The Defendant asserts that Vance's testimony did not qualify as an admission by a party opponent under

---

[5] During her deposition, Vance could only identify the speaker as a nurse named Pat who was in the room when her mother fell. At trial, after seeing nurse Terry testify, Vance positively identified her as the "Pat" she had spoken to on the day after her mother's fall.

OCGA § 24-8-801 (d) (2) (D) and that the probative value of the testimony was outweighed by the danger of unfair prejudice. See OCGA § 24-4-403.

At trial, Vance identified "Pat" as Pat Terry, the first nurse to testify during the trial. Vance testified that Terry told her that while two employees (not including Terry) began to assist Plaintiff to the bathroom, she "excessively urinated" on the floor.[6] Vance also testified that Terry stated that the Plaintiff was instructed to stand by the wall while they cleaned and that Terry was then called into the room only to bring more towels. Vance then testified that Terry informed her that when the Plaintiff thought the employees were finished cleaning, she walked around them to her bed and fell. Vance then stated that Terry "laughed" when she recounted the events.

---

[6] Although it was not necessarily clear from Vance's testimony that Terry had personal knowledge of all of the events about which she spoke, the personal knowledge requirement of OCGA § 24-6-602 "shall not apply to party admissions." Id. This appears to be consistent with prior Georgia law. See *Brooks v. Sessoms*, 47 Ga. App. 554, 555 (171 SE2d 222) (1933) (finding that "[a]dmissions do not come in on the ground that the party making them is speaking from his personal knowledge") (citation and punctuation omitted). Nor was there multiple hearsay inasmuch as Vance did not testify that Terry repeated statements made by a third person. See, e.g., *Holiness v. Moore-Handley, Inc.*, 114 F. Supp. 2d 1176, 1183 n. 7 (N. D. Ala. 1999).

The trial court overruled Defendant's objection to this testimony at trial on the ground that it constituted an admission of a party opponent under OCGA § 24-8-801 (d) (2) (D). Under Georgia's Evidence Code, an out-of-court statement offered against a party will not be excluded under the rule of hearsay if the statement is made "by the party's agent or employee. . . concerning a matter within the scope of the agency or employment, made during the existence of the relationship[.]" OCGA § 24-8-801 (d) (2) (D).[7] See also *Law v. BioLab, Inc.*, 325 Ga. App. 500, 502 (1) (753 SE2d 446) (2013) ("For a statement to be admissible under OCGA § 24-8-801 (d) (2) (C) or (D), the subject matter of the statement must relate to what the employee would know because of the employee's job duties") (citation omitted). The statement at issue was allegedly made to Vance by Terry about what happened on the night of Plaintiff's fall. Further, it is undisputed that Nurse Terry was an employee of the defendant and that the statement was a matter within the scope of her employment.

---

[7] To the extent that Defendant also suggests that Vance's testimony constituted extrinsic evidence of a prior inconsistent statement by Terry and was not admitted in compliance with the requirements of OCGA § 24-6-613 (b) (which provides, in part, that "extrinsic evidence of a prior inconsistent statement by a witness shall not be admissible unless the witness is first afforded an opportunity to explain or deny the prior inconsistent statement"), we note that OCGA § 24-6-613 (b) states that it "shall not apply to admissions of a party-opponent as set forth in paragraph (2) of subsection (d) of Code Section 24-8-801."

15

Accordingly, the statement was an admission for purposes of OCGA § 24-8-801 (d) (2) (D). Pretermitting whether Defendant has shown that it sought to exclude the evidence under OCGA § 24-4-403 at trial, although Vance's testimony contained prejudicial elements, some of which were also arguably unfair, her testimony was substantially probative in that it provided a version of events surrounding the Plaintiff's fall. See, e.g., *United States v. Meester*, 762 F.2d 867, 875 (11th Cir. 1985) ("Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter[.]") (Citation and punctuation omitted; emphasis in original) (applying Fed. R. Evid. 403). Accordingly, the trial court did not abuse its discretion in overruling Plaintiff's objection to this testimony.

4. Defendant contends that the trial court erred in allowing evidence of Plaintiff's medical expenses to be submitted to the jury over Defendant's objection without expert testimony to establish that the medical costs were related to any injury sustained as a result of Plaintiff's fall.[8] Defendant contends that the admission of

---

[8] Defendant also argues that the trial court erred in allowing a summary list of Plaintiff's medical expenses to be admitted into evidence. However, when raised at trial, that objection was sustained and the summary list was not admitted into evidence.

16

Plaintiff's medical bills was in error because there was "absolutely no expert testimony separating bills related to [Plaintiff's] ongoing cognitive condition from those resulting from her unrelated ankle injury." We disagree.

Plaintiff tendered as evidence the medical bills incurred after Plaintiff's fall. Defendant's contention that Plaintiff "was allowed to admit, without explanation, the entirety of [Plaintiff's] medical bills" is belied by the record. At trial, Chris Vance, Plaintiff's daughter, testified that she went through each bill item by item and included only those charges which were obviously directly related to Plaintiff's ankle injury and treatment for the ankle injury. Specifically, Plaintiff's counsel stated that Vance

> [went] through and separated out [bills] related to the injury. . . And . . . with respect to [bills related to the nursing home, Wesley Woods] we . . . did not include her entire stay. We only included x-rays of her ankle, the blood thinning injection . . . [and] [t]he only room charges were the room charges after the surgery, not before . . . and the physical therapy. Defendant objected, arguing that expert testimony was required to distinguish bills that were related to Plaintiff's ongoing cognitive condition from those resulting from her injuries sustained during her fall. The trial court overruled the objection, holding that such distinction could be determined upon cross-examination.

17

Under OCGA § 24-9-921 (a), a plaintiff patient or the member of her family responsible for care of the patient "shall be a competent witness to identify bills for expenses incurred in the treatment of the patient upon a showing by such a witness that the expenses were incurred in connection with the treatment of the injury . . . involved in the subject of litigation at trial. . . ." Subsection (b) of the same Code Section further provides that "it shall not be necessary for an expert witness to testify that the charges were reasonable and necessary. However, nothing in this Code section shall be construed to limit the right of a thorough and sifting cross-examination as to such items of evidence."

"Where a party sues for damages, he has the burden of proof of showing the amount of loss in a manner in which the jury . . . can calculate the amount of the loss with a reasonable degree of certainty. An allowance for damages cannot be based on guess work." (Citation and punctuation omitted.) *Lester v. S. J. Alexander, Inc.*, 127 Ga. App. 470, 471 (1) (193 SE2d 860) (1972). Further, "[w]here medical bills include charges for treatment, drugs, and hospitalization for items other than those arising out of the cause of action, the plaintiff has the duty to segregate the irrelevant expenses since he has the burden of proof to show his losses in such manner as can permit calculation thereof with a reasonable degree of certainty." (Citation and punctuation

18

omitted.) *Daniel v. Parkins* 200 Ga. App. 710, 711-712 (4) (409 SE2d 233) (1991). This Court has held that all that is required is "that it be shown that medical expenses were incurred in connection with the treatment of the injury, disease or disability involved in the subject of litigation at the trial, which may be done by lay testimony." (Citation and punctuation omitted.) Id. at 712 Accordingly, "[w]hether the edited medical bills did in fact represent treatment only for [Plaintiff's injury] and whether any irrelevant bill for [her] pre-existing . . . condition had been included in those submitted for admission were topics for appellant to pursue on cross-examination." (Citation omitted.) Id. Here, Plaintiff provided lay testimony that the edited bills admitted into evidence were related solely to the injury at issue in the present litigation, and Defendant elected not to cross-examine Chris Vance regarding these bills.[9] There was no error in admitting the edited medical bills over Defendant's objection.

*Judgment affirmed. McFadden, J., concurs and Andrews, P. J. concurs in judgment only.*

---

[9] Compare *Eberhart v. Morris Brown College*, 181 Ga. App. 516, 517 (1) (352 SE2d 832) (1987) (affirming trial court's grant of directed verdict for the defendant/appellee on the ground that plaintiff had failed to prove through medical expert testimony a causal connection between the football injury he had sustained during his 1979-1982 collegiate football career and the physical condition which underlay the medical expenses he incurred several years later in 1985).