[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-13050

Non-Argument Calendar

_____

LAUREN DODD,
AMANDA HAMMOND,
RICHARD SMITH,

Plaintiffs-Appellants,

*versus*

INTERNATIONAL LONGSHOREMEN'S ASSOCIATION
LOCAL 1475 CLERKS AND CHECKERS UNION, INC.,

Defendant-Appellee.

INTERNATIONAL LONGSHOREMEN'S ASSOCIATION

2                     Opinion of the Court                  24-13050

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:23-cv-00327-RSB-CLR

_____

Before JILL PRYOR, BRASHER, and BLACK, Circuit Judges.

PER CURIAM:

Lauren Dodd, Richard Smith, and Amanda Hammond (Appellants) appeal the district court's grant of the International Longshoremen's Association Local 1475 Clerks and Checkers Union, Inc.'s (Local 1475) motion to dismiss Appellants' complaint. Appellants challenge the district court's reliance on a January 23, 2024, appeal determination by the National Labor Relations Board (NLRB) in dismissing their complaint. They contend the district court erred in holding they did not sufficiently plead that Local 1475's actions were arbitrary, discriminatory, and in bad faith in violation of its duty of fair representation. After review, we reverse and remand for further proceedings.

## I.  BACKGROUND

*A.  Complaint*

The facts alleged in the Complaint are these. Local 1475 is a party to a collective-bargaining agreement with the Georgia

Stevedore Association (the CBA) governing the rates of pay, rules, and working conditions for persons working as clerks and checkers at the Port of Savannah. Local 1475 operates a hiring hall where it assigns work to clerks and checkers in accordance with the order set forth in the CBA referred to as the "Savannah Clerks and Checkers Seniority Plan" (the Plan). Under the Plan, clerks and checkers are grouped together in different classes based on when they first achieved 700 hours of work in a specific contract year and whether they maintained 700 hours of work in each contract year thereafter. The requirement to work at least 700 hours to establish seniority is set forth in the International Longshoremen's Association (ILA) Constitution, which states:

> Every local union shall have a seniority system requiring a minimum of 700 work hours or credited hours to establish a year of service. Such seniority system based on years of service shall be used to determine priority of employment for hiring purposes.

Under the Plan, a contract year begins each October 1 and ends on the following September 30, and contract years are designated by the calendar years they straddle, *e.g.*, 2023-24. The classes form a seniority-based system for assigning clerk and checker work at the Port of Savannah. Local 1475 offers available work to all members of a clerks and checkers class before work is offered to clerks and checkers in the subsequent class.

During contract year 2020-21, there was an unusual expansion of clerk and checker work at the Port of Savannah, creating a temporary demand for additional clerks and checkers. The ILA,

Local 1475, and the Georgia Stevedore Association responded to the increased demand through the creation of an "Emergency List" of new workers. Before making the Emergency List known to the members of the bargaining unit, Local 1475 leaders recruited family and friends to become clerks and checkers under the Emergency List. Local 1475 leaders populated the Emergency List in large part with family and friends before making the Emergency List generally known to the members of the bargaining unit. In their Complaint, Appellants identified 22 persons as friends and family who were placed on the Emergency List and detailed their relationships with officers of Local 1475.

At a Local 1475 membership meeting in February 2021, members asked Local 1475 leaders about the Emergency List. In response to the questions raised, Local 1475 made the list available to others provided they sign up in person at a location within the Port of Savannah during a single four-hour period occurring two days after the membership meeting. Only those persons with valid Port of Savannah credentials could access the Emergency List sign-up location. The ILA and Local 1475 required persons who worked as clerks and checkers on the Emergency List to execute a waiver of seniority rights as a condition of employment. Consequently, Emergency List members who performed clerk and checker work in the 2020-21 contract year had no seniority preference over those who first performed clerk and checker work during the 2021-22 contract year. There were approximately 200 people on the Emergency List.

**A** Memorandum of Understanding entered on October 11, 2021, created a classification of union employees called "HH" which was comprised by "individuals who worked at least 700 combined hours in the 2021-2022 contract year." Classification HH was comprised of clerks and checkers "who first performed work in the 2021-2022 contract year," and clerks and checkers "who first performed work under the Emergency List."

In 2023, the amount of available clerk and checker work at the Port of Savannah declined. In the Spring of 2023, at the urging of the ILA and Local 1475, the Georgia Stevedore Association entered a Memorandum of Understanding that subdivided Class HH into two Subclasses, designated as HH-1 and HH-2.

Subclass HH-1 was:

All individuals who worked at least 700 hours through the Local 1475 hiring system during both the 2020-21 and 2021-22 Contract Years, and all individuals who were on an emergency list during the 2020-21 Contract Year and worked at least 700 hours through the Local 1475 hiring system during the 2021-22 Contract Year.

Subclass HH-2 was:

All other individuals who worked at least 700 hours through the Local 1475 hiring system during the 2021-22 Contract Year.

The 2023 Memorandum of Understanding provided:

For purposes of hiring preference within [] the HH classification, all members of the Sub-classification

6                          Opinion of the Court                    24-13050

> HH-1 will be referred work they are qualified to per-
> form before any jobs are offered to members of Sub-
> classification HH-2.

Prior to the ratification vote on the 2023 Memorandum of Under-
standing, Local 1475 leaders did not disclose they had populated
the Emergency List, and hence Subclass HH-1, with their family
and friends.  Appellants asserted that the ILA and Local 1475
demonstrated favoritism for the family and friends of Local 1475
leaders by negotiating and implementing the 2023 Memorandum
of Understanding and failing to disclose the Emergency List was
populated in large part by the family and friends of Local 1475 lead-
ers.  On May 11, 2023, Local 1475 conducted a single-day ratifica-
tion vote, and the membership of Local 1475 ratified the 2023
Memorandum of Understanding.

On June 19, 2023, the ILA and Local 1475 effectuated the di-
vision of Class HH into the subclassifications HH-1 and HH-2.  Ap-
proximately 30 persons who appeared on the Emergency List and
who were assigned to Subclass HH-1 performed fewer than 700
work hours or credited hours during the 2020-21 contract year.  As
a result of the division, the amount of work available for members
of Class HH-1 increased substantially and the amount of work
available to members of Class HH-2 declined substantially.

Appellants claim the ILA and Local 1475 violated the duty
of fair representation by arbitrarily and capriciously dividing Class
HH into the two subclasses and misrepresenting material facts re-
garding the 2023 Motion of Understanding before the ratification

24-13050               Opinion of the Court                7

vote. Appellants assert the actions of the ILA and Local 1475 were discriminatory and in bad faith.

## B. *Judicial Notice*

Local 1475 moved to dismiss the Complaint for failure to state a claim. In support of its motion, it also filed a request for judicial notice. Specifically, Local 1475 requested the court take judicial notice of an unfair labor practice charge that Appellant Amanda Hammond filed on May 17, 2023, against Local 1475 with the NLRB with allegations similar to those contained in the Complaint. Attached to the judicial notice request was (1) a copy of the May 17, 2023, Charge, (2) a copy of an NLRB Regional Director's December 18, 2023, Dismissal Letter, (3) a copy of the NLRB's December 29, 2023, Letter acknowledging receipt of Hammond's appeal, (4) a copy of the NLRB's Office of the General Counsel's January 23, 2024, Appeal Denial Letter, (5) a copy of the ILA Local 1475 Savannah Clerks and Checkers Seniority Plan, (6) a copy of the October 1, 2021, Memorandum of Understanding, and (7) a copy of the June 1, 2023, Addendum to the October 1, 2021, Memorandum of Understanding. Local 1475 asserted that unfair labor practice "charges and NLRB proceedings following those charges, such as a decision to dismiss the charge and deny the appeal, are matters of public record and, therefore, properly subject to judicial notice." Thus, documents from Hammond's NLRB proceedings were subject to judicial notice as facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." They also stated the unfair labor

practice charge, its dismissal, appeal acknowledgement, and appeal denial were not reasonably subject to dispute. As to the Seniority Plan, 2021 Memorandum of Understanding, and the Addendum, Local 1475 contended judicial notice was appropriate as Appellants specifically relied upon these documents in their Complaint and the contents were not in dispute.

Appellants did not object to Local 1475's judicial notice request. Because Local 1475 "provided a sound legal basis for its proposed judicially noticed facts, and because [Appellants] . . . failed to show how these facts could be reasonably disputed," the court granted Local 1475's request for judicial notice for purposes of the motion to dismiss.

## C. Grant of Motion to Dismiss

On August 22, 2024, the district court granted Local 1475's motion to dismiss. In its dismissal order, the district court divided the Appellants' violation of the duty of fair representation claim into two parts: (1) dividing the HH Class into the two subclasses, and (2) misrepresenting material facts about the 2023 Memorandum of Understanding before the ratification vote. As to splitting the HH Class, the district court determined the Complaint lacked allegations supporting a breach of the duty of fair representation. The district court concluded that the split was not arbitrary. It reasoned, based on the judicial notice it had taken of the NLRB's Office of the General Counsel's January 23, 2024, Appeal Denial Letter, that "Local 1475 made the decision to split the class to resolve a previously filed NLRB charge against it," and "[o]nce Local 1475

proposed the class divide and membership voted to split the HH class, the charging party in that case withdrew the charge." Because the Complaint alleged "no facts indicating that this was not the motive for splitting the class or that the true motive was solely to show favoritism to certain friends and family contained on the Emergency List," the Complaint lacked "allegations indicating that the decision to split the class fell outside the wide range of reasonableness afforded to unions."

The district court also stated there was no allegation to support a claim that Local 1475 acted discriminatorily by splitting the class. It stated the Complaint supported the HH Class was split based on objective criteria as Class HH-1 was composed of employees who (1) worked at least 700 hours in 2021-22, and (2) had worked at least 700 hours in 2020-21, or had worked under the Emergency List in 2020-21. It further stated that Appellants had not alleged "any facts indicating that these class distinctions were intended to discriminate against a particular class or that they were somehow not based on objective criteria." The court then stated that while the Appellants "seem to believe that union leaders discriminatorily preferred union leaders' friends and family on the Emergency List by creating these subdivisions, it is undisputed that the HH-1 class was made in response to charges brought against the union after those on the Emergency List were made to waive seniority rights for the 2020-21 calendar year."

Finally, the district court determined the Complaint failed to allege Local 1475 acted in bad faith. Despite listing 22 members of

the Emergency List who were friends or family of union leadership, the court stated Appellants "failed to allege that those individuals' presence on the Emergency List were what motivated the division." Nor were there any facts pled that showed the friends and family ultimately obtained HH-1 status.

The district court concluded that "[t]aken together with the judicially noticed facts, the allegations in the Complaint provide a reasonable factfinder with no basis, beyond mere speculation, to find that the class split was arbitrary, discriminatory, or made in bad faith." Thus, there was no basis for finding the class division breached the duty of fair representation.

As to failing to disclose the membership of the Emergency List before the 2023 Memorandum of Understanding vote, the district court first stated Appellants provided no allegation or supporting authority that the specific membership of the Emergency List was a fact subject to disclosure before a vote. The court, once again based on the judicial notice it had taken of the NLRB's Office of the General Counsel's January 23, 2024, Appeal Denial Letter stated, "[t]he NLRB previously concluded (twice) that a challenge to the Emergency List's existence was meritless" and so "plausibly" might have considered the membership of the list to be immaterial and neglected to mention it. The court concluded that even if the information regarding the names on the Emergency List was material to the vote and Local 1475 intentionally concealed it, Appellants failed to allege facts showing the information would have affected the outcome of the ratification vote.

24-13050                Opinion of the Court                11

The district court once again cited "the judicially noticed fact that Local 1475 split the HH Class in response to charges raised by union membership," in its conclusion dismissing the case.

## II.  DISCUSSION

*A.  Judicial Notice*

We begin with Appellants' contention the district court improperly relied on the NLRB appeal[1] in deciding the motion to dismiss.  Appellants assert the decisions of the NLRB Regional Administrator and General Counsel cannot form the basis of collateral estoppel.  We agree.  *See Aircraft & Engine Maint. & Overhaul, Bldg., Constr., Mfg., Processing & Distrib. v. I.E. Schilling Co.*, 340 F.2d 286, 289 (5th Cir. 1965)[2] ("Surely, the mere refusal by the general counsel to issue a complaint is not res judicata and can not constitute a collateral estoppel.  The failure of the general counsel to

---

[1] Appellants failed to object to the taking of judicial notice, but they explain an objection was unnecessary as Local 1475 sought judicial notice for the chronology of the NLRB appeal and the existence of the various contracts and agreements.  As the existence and chronology of the NLRB appeal and substance of the various agreements were "not reasonably subject to dispute . . . judicial notice as to those limited facts was appropriate."  Appellants are not precluded from arguing the scope of the district court's judicial notice on appeal because the district court's judicial notice went further than noting the existence of and chronology of the NLRB proceedings.

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

issue a complaint is not necessarily based on the evidence or the merits of a case.").

A "court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (quotation marks omitted). "Accordingly, a court may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation." *Id.*

A judicially noticed fact is "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). We discussed judicial notice in *Jones*:

> In order for a fact to be judicially noticed under Rule 201(b), indisputability is a prerequisite. Since the effect of taking judicial notice under Rule 201 is to preclude a party from introducing contrary evidence and in effect, directing a verdict against him as to the fact noticed, the fact must be one that only an unreasonable person would insist on disputing. If it were permissible for a court to take judicial notice of a fact merely because it has been found to be true in some other action, the doctrine of collateral estoppel would be superfluous. Moreover, to deprive a party of the right to go to the jury with his evidence where

> the fact was not indisputable would violate the con-
> stitutional guarantee of trial by jury.

29 F.3d at 1553 (citations omitted).

While it was not an abuse of discretion for the district court to take judicial notice of the fact of Hammond's NLRB charge and appeals, accepting the reasoning of the NLRB's dismissal as undisputed through judicial notice and using it to dismiss the Appellants' Complaint in this case was an abuse of discretion. *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651 (11th Cir. 2020) (reviewing district court's decision to take judicial notice for an abuse of discretion). The district court's judicial notice should have extended only to the facts that (1) Hammond filed a Charge with the NLRB on May 17, 2023, (2) an NLRB Regional Director dismissed the Charge on December 18, 2023, (3) the NLRB acknowledged Hammond's appeal of the decision on December 29, 2023, and (4) the NLRB's Office of the General Counsel denied Hammond's appeal on January 23, 2024. As our discussion of the district court's order details, the court relied heavily on the reasoning contained within the NLRB's denial of Hammond's appeal in dismissing Appellants' Complaint. The district court cited the NLRB's reasoning five times. "Local 1475 made the decision to split the class to resolve a previously filed NLRB charge against it." "[I]t is undisputed that the HH-1 class was made in response to charges brought against the union . . . ." "Taken together with the judicially noticed facts, the allegations in the Complaint provide a reasonable factfinder with no basis, beyond mere speculation, to find the class split was arbitrary, discriminatory, or made in bad faith." "The NLRB previously concluded

(twice) that a challenge to the Emergency List's existence was meritless." And finally, "[t]he Complaint does nothing to thwart the judicially noticed fact that Local 1475 split the HH Class in response to charges raised by union membership." These findings go beyond the "judicial act" that the order represents or the subject matter of the NLRB litigation. *See Jones*, 29 F.3d at 1553.

## B. Allegations in the Complaint

This court reviews a district court's dismissal of a complaint for failure to state a claim *de novo*. *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019). We take the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347 (11th Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need not contain "detailed factual allegations," *Twombly*, 550 U.S. at 555, but a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678.

A labor union's duty of fair representation is based on its "statutory authority to represent all members of a designated unit," and "includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to

avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *See id.* at 190. A plaintiff need only show that the union's actions could be characterized in one of these three ways. *See Higdon v. United Steelworkers of Am., AFL-CIO-CLC*, 706 F.2d 1561, 1563 (11th Cir. 1983).

To be non-arbitrary, a decision must be "(1) based upon relevant, permissible union factors which excludes the possibility of it being based upon motivations such as personal animosity or political favoritism; (2) a rational result of the consideration of those factors; and (3) inclusive of a fair and impartial consideration of the interests of all employees." *Tedford v. Peabody Coal Co.*, 533 F.2d 952, 957 (5th Cir. 1976) (footnotes omitted). The Fifth Circuit has explained:

> [I]t is unlawful for a union to operate an exclusive hiring hall by discriminating among employees for arbitrary and capricious reasons. The discrimination need not be based on an individual's union activities, or lack thereof, in order to constitute a [breach of the duty of fair representation]. The Board has held that discrimination in job referrals based on race, sex, or nepotism [constitutes such a breach].

*N.L.R.B. v. Gen. Truckdrivers, Warehousemen and Helpers*, 778 F.2d 207, 213 (5th Cir. 1985) (citation and footnotes omitted).

Appellants' Complaint states a plausible claim that Local 1475 breached the duty of fair representation, as the Complaint

alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678. As detailed in the Background section, Appellants have provided plausible allegations that Local 1475's actions were taken because of nepotism and therefore were arbitrary. They alleged that before making the Emergency List known to the members of the bargaining unit, Local 1475 leaders recruited family and friends to become Clerks and Checkers under the Emergency List. Appellants identified 22 members of the Emergency List who were friends or family of union leadership and detailed their relationships with officers of Local 1475. They alleged union leaders populated the Emergency List with their friends and family before the existence of the Emergency List was made generally known to members of the bargaining unit. They claim that prior to the ratification vote on the 2023 Memorandum of Understanding, Local 1475 leaders failed to disclose to membership that they had populated the Emergency List, and thus new Subclass HH-1, with their family and friends. Appellants alleged that based on these actions, the ILA and Local 1475 demonstrated favoritism for the family and friends of Local 1475 leaders by negotiating and implementing the 2023 Memorandum of Understanding. The allegations contained in the Complaint are sufficient to survive a motion to dismiss as a non-arbitrary decision is "inclusive of a fair and impartial consideration of the *interests of all employees*." *See Tedford*, 533 F.2d at 957 (emphasis added).

These allegations are also sufficient facts to plausibly allege that Local 1475's true intent in dividing Class HH into HH-1 and

HH-2 and failing to disclose the membership of Class HH-1 before the ratification vote, thus giving hiring preference to that subclass, was to discriminatorily benefit the leadership's family and friends over other employees. Discrimination based on nepotism constitutes a breach of the duty of fair representation, and Appellants have sufficiently alleged discrimination based on nepotism in the Complaint. *See Gen. Truckdrivers, Warehousemen and Helpers*, 778 F.2d at 213.

### III.  CONCLUSION

In basing its dismissal on the NLRB decision, the district court failed to take the Complaint's allegations in the light most favorable to the Appellants as it was required to do. *See Ray*, 836 F.3d at 1347. As Appellants' Complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, the district court erred in dismissing Appellants' Complaint. Accordingly, we reverse the district court's judgment of dismissal and remand this case for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**