[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV - 6 2000
THOMAS K. KAHN
CLERK

_____

No. 98-5169

_____

D. C. Docket No. 96-00565-CR-LCN

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS ALBVERTO PRIETO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(November 6, 2000)**

Before TJOFLAT, MARCUS and BRIGHT[*], Circuit Judges.

MARCUS, Circuit Judge:

---

[*]Honorable Myron H. Bright, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

This appeal arises from the conviction of Defendant Carlos Albverto Prieto for crimes committed in connection with a conspiracy to rob a United Parcel Service (UPS) truck. Following a jury trial, Prieto was convicted of conspiracy to commit robbery, attempted robbery, and the use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 1951(a), and 924(c)(1). Defendant attacks his convictions, alleging first that the district court abused its discretion in admitting the prior consistent statement of a witness made to a police officer following the witness's arrest, and second, that the district court erred in giving the Eleventh Circuit Pattern Jury Instruction regarding codefendants' guilty pleas. Because we can discern no reversible error, we AFFIRM.

## I.

The relevant facts are straightforward. Beginning in May of 1996, and continuing until June 11, 1996, Prieto, Rodolfo Jose Palacios, and several other codefendants engaged in a conspiracy to rob a UPS truck. Prieto and his co-conspirators had inside information that a certain UPS truck route carried expensive computer equipment, and they schemed to rob a truck running that route. According to their plan, one car would block the path of the UPS truck, and the driver and passengers would then exit the car and abduct the UPS driver at gunpoint. The driver's hands and feet would be bound with rope or duct tape, and

2

a co-conspirator wearing a UPS uniform would replace the driver. Disguised as a UPS employee, the co-conspirator would drive the truck to an off-loading site where the computer hardware would be removed.

Though the conspirators conducted several dry runs, the conspirators bungled their first attempted robbery, on June 4, 1996. Subsequently, there were problems with the van to be used in the robbery, and one of the conspirators was arrested on other charges. Then on June 11, 1996, the conspirators failed in their second attempted robbery. They successfully blocked the UPS truck with a Toyota Corolla, but aborted the robbery after they observed a car approaching. The UPS truck contained items that had been shipped in interstate commerce, including two boxes of computer chips with a combined cash delivery value of over $60,000.

On February 4, 1997, a grand jury sitting in the Southern District of Florida returned an eight-count indictment charging Prieto and nine codefendants with various conspiracy, robbery and firearms charges arising from the two failed episodes. All codefendants except for Prieto and two others pled guilty.[1] Prieto was charged with conspiracy to commit robbery, two counts of attempt to commit robbery, and two counts of using a firearm during a crime of violence. A jury found Prieto guilty as charged.

---

[1]One was convicted on several counts, and the other was acquitted on all charges.

II.

A district court is granted broad discretion in determining the admissibility of a prior consistent statement under Fed. R. Evid. 801(d)(1)(B) and will not be reversed absent a clear showing of abuse of discretion. See United States v. Reed, 887 F.2d 1398, 1405 (11th Cir. 1989).

Where a party makes no objection in the trial court to the matter complained of on appeal, our review is for plain error. We find plain error only where (1) there is an error; (2) the error is plain; (3) the error affects the defendant's substantial rights in that it was prejudicial and not harmless; and (4) the error seriously affects the fairness, integrity or public reputation of a judicial proceeding. See United States v. Olano, 507 U.S. 725, 730-32, 113 S.Ct. 1770, 1775-76, 123 L. Ed. 2d 508, (1993). We therefore review the district court's use of the Eleventh Circuit Pattern Jury Instruction for plain error.

A. Rule 801(d)(1)(B): Hearsay Exception

Palacios was arrested on October 24, 1996. He gave a statement on the evening of his arrest, signed a cooperation agreement with the Government in November of 1996, and ultimately pled guilty in April of 1997. Palacios became one of the government's key witnesses against Prieto, testifying extensively concerning Prieto's involvement in the attempted UPS truck robberies. To bolster

4

Palacios's testimony, the Government sought to offer the testimony of Metro-Dade Police Detective Joseph Gross, regarding prior consistent statements Palacios made on the evening of his arrest.

Though Palacios's statements would ordinarily be inadmissible hearsay, the government sought to introduce them to rebut a charge of recent fabrication pursuant to Rule 801(d)(1)(B). Rule 801(d)(1)(B) provides, in pertinent part, that a prior consistent statement by a witness is not hearsay if (1) the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and (2) the statement is consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. Fed. R. Evid. 801(d)(1)(B). In Tome v. United States, 513 U.S. 150, 157-58, 115 S.Ct. 696, 701, 130 L. Ed. 2d 574 (1995), the Supreme Court held that to be admissible pursuant to Rule 801(d)(1)(B), prior consistent statements must have been made before the alleged influence or motive to fabricate arose.

The central question raised by this appeal is whether Palacios had a motive to fabricate in order to curry favor with the government at the time he made his statements to Detective Gross. In order to decide this question, the trial judge heard argument outside the presence of the jury regarding whether Palacios had a

5

motive to fabricate at the time of his statement to Detective Gross. The government said that although Palacios made the statement following arrest, it was given prior to any cooperation agreement between Palacios and the government and thus there was no motive to fabricate. The defense suggested, however, that a person inevitably has a motive to try to reduce the penalties against him through cooperation with the government immediately upon arrest. The trial judge conducted an examination during which Agent Fabregas, who was present at Palacios's arrest and who brought him to F.B.I. headquarters, testified that the subject of cooperation was not raised with Palacios. Indeed, Detective Gross, who was present from the beginning of Palacios's interrogation, testified that to his knowledge, there had been no discussions with Palacios regarding the possibility of cooperation with the government. Both witnesses unambiguously said that Palacios voluntarily began talking to the agents during the interrogation, and that he did not ask any questions about what benefits, if any, he might receive in exchange for his cooperation.

Based on the examination and the arguments heard regarding the relevant case law, the district court ruled that Palacios's prior consistent statements were admissible. We agree.

The trial judge was cautious and methodical in rendering the 801(d)(1)(B) ruling. She heard legal arguments from both sides and held a hearing in limine during which several agents testified as to the events that transpired from the time of Palacios's arrest, continuing through his interrogation. Her comments reflect thorough consideration:

> I read these cases that were cited yesterday in the record. And I think that it's been clear from the testimony that was taken that the statement clearly predated and [sic] the motive to fabricate or to obtain a better deal . . ..

> But the record is clear that he was given his Miranda rights, that is, Mr. Palacios. And then he started making statements to Agent Gross without asking anything to the extent of am I gonna get a deal or what's in it for me, or words to that effect.

Judge Nesbitt squarely found as a matter of fact that Palacios did not have a motive to fabricate at the time of his statements to Detective Gross.

Based on a review of this record, the district court's finding is not clearly erroneous. Therefore, the only way the district court could have abused its considerable discretion in admitting Palacios's prior consistent statements is if we hold, as a matter of law, that any post-arrest statement is necessarily tinged with a motive to lie in order to curry favor with the government. In essence, what the defense seeks is the creation of a bright line, per se rule barring the admission of

7

any prior consistent statements made by a witness following arrest. We decline to adopt such a rule.

Whether a motive to fabricate attaches upon arrest presents a matter of first impression in this Circuit. The only case in this Circuit to address the Supreme Court's holding in Tome is United States v. Paradies, 98 F.3d 1266 (11th Cir. 1996), cert. denied, 521 U.S. 1106, 117 S.Ct. 2483, 138 L. Ed. 2d 992 (1997), which presents a very different set of facts. In Paradies, the parties conceded error where the district court, pursuant to Rule 801(d)(1)(B), admitted tape-recorded conversations that had been recorded *after* one of the participants had agreed to cooperate with the government. Id. at 1290. Indeed, both parties concede that a motive to fabricate would have arisen upon Palacios's arrest if he had inquired into, or been promised leniency if he cooperated. In this case, however, the uncontroverted testimony established and the district court found that Palacios made his prior consistent statements to Detective Gross *prior* to any discussion of cooperation or leniency. Because of this critical difference Paradies is inapposite.

Several courts have held that a motive to fabricate does not always and necessarily attach upon arrest, but rather that whether a statement is tinged with a motive to lie is a question of fact to be determined by the trial court according to the particular circumstances of each case. See United States v. Roach, 164 F.3d

8

403, 410 (8th Cir. 1998), cert. denied sub nom., Tail v. United States, 120 S.Ct. 117, 145 L. Ed. 2d 99 (1999) (affirming admission of prior consistent statements made in a post-arrest interview); United States v. Tate, 1998 WL 637422 at *3 (4th Cir. 1998) (unpublished table decision) (factual finding that admission of prior consistent statements made to police -- one prior to arrest, the day of arrest, and one two days after arrest -- did not constitute plain error).

In United States v. Fulford, 980 F.2d 1110 (7th Cir. 1992), the court affirmed the admission of prior consistent statements made by a witness under circumstances similar to those in this case. In Fulford, the witness's prior consistent statements had to do with a coconspirator's participation in the sale and distribution of methamphetamine. Following arrest, the witness was advised of his Miranda rights and he agreed to provide information to the arresting officers. Notably, the witness was not given any deal or other incentive to offer information, but was merely told that his cooperation would be brought to the attention of the United States Attorney. Subsequently, he pleaded guilty at his arraignment and only later entered into a cooperation agreement with the government. As in this case, the defense argued that the witness fabricated post-arrest statements in the hope of receiving a lighter sentence in exchange for his cooperation. The court rejected this argument on the ground that it could not "say that the district judge

abused his discretion in allowing [the prior consistent statements] because reasonable minds can differ as to when [the witness] may have first possessed a motive to fabricate." Id. at 1114. Rather than attaching automatically upon arrest, the court recognized that a judge could reasonably find that a motive to fabricate did not exist until the witness entered into the cooperation agreement with the government. And in the instant case there was no inquiry or comment about cooperation at all.

We agree that statements made after arrest are not automatically and necessarily contaminated by a motive to fabricate in order to curry favor with the government. To hold otherwise, as the defense urges us to do, would "effectively swallow[] the rule with respect to prior consistent statements made to government officers: by definition such statements would never be prior to the event of apprehension or investigation by the government which gave rise to a motive to falsify." United States v. Henderson, 717 F.2d 135, 139 (4th Cir. 1983).

Indeed, we recognize that a variety of motives may drive a person's decision to disgorge the details of a crime he has committed. For one, as this Court's predecessor recognized, a man's conduct is often controlled by his conscience. See United States v. Pulvano, 629 F.2d 1151, 1157 n.8 (5th Cir. 1980) ("As R.L. Stevenson phrased it: 'There's just one thing I cannot bear, and that's my

10

conscience.'") (quoting from Scots, XIV, My Conscience).  For another, it is certainly true that "the world's great religions teach in one form or another that confession is good for the soul and that by making confession one may be absolved . . ..[T]o many people telling the truth and 'coming clean' satisfies a basic spiritual need of one who has transgressed and provides a measure of relief."  United States ex rel. Williams v. Fay, 323 F.2d 65, 72 (2nd Cir. 1963).  Confession may also be an emotional response triggered by feelings of remorse and sorrow.  See Bryant v. Vose, 785 F.2d 364, 368 (1st Cir. 1986) (concluding that confession was triggered by sorrow and remorse rather than a desire for leniency).  No doubt there are other motivators as well, including the desire to curry favor with law enforcement and obtain a more favorable outcome.

But given the complexity of the human psyche, we agree with the Fourth, Seventh, and Eighth Circuits that whether a witness had a motive to fabricate when prior consistent statements were made is plainly a question of fact to be resolved by the trial court based precisely on the particular circumstances of an individual case.  Quite simply, the trial court is in the best position to make that determination and its determination deserves great deference.

We are unpersuaded by the cases the defendant cites to the contrary. Defendant directs our attention to several cases where courts have affirmed rulings

11

that prior consistent statements made after arrest were inadmissible. The defense argues that based on these cases, we should find that motive to fabricate inevitably attaches upon arrest. These cases are for the most part distinguishable. In United States v. Awon, 135 F.3d 96, 100 (1st Cir. 1998), the court held that two brothers' statements were equally contaminated by a motive to fabricate when they first spoke with police as when they subsequently testified at trial. In that case, however, both brothers testified that they spoke with investigators only *after* the potential benefits of cooperation had already been discussed. Awon, 135 F.3d at 100. Here, the trial judge found that Palacios made his statements *before* any discussion of cooperation. The court's holding in United States v. Albers, 93 F.3d 1469, 1483 (10th Cir. 1996), is similarly distinguishable. In Albers, one witness feared that all of the other conspirators would testify against him, and the other made his statements contemporaneously with his request that the court appoint him a new lawyer and allow him to appeal his conviction. Here, in contrast, there was no evidence that Palacios either feared the testimony of the other conspirators or that he was attempting to curry favor with a trial judge.

United States v. Collicott, 92 F.3d 973, 978 (9th Cir. 1996), on which Palacios also relies, actually supports the conclusion that the question of when a motive to fabricate attaches is a question of fact. In Collicott, the witness had been

12

stopped by police in her car, which contained drugs, when she made the prior consistent statement. Under a per se rule that motive to fabricate attaches upon arrest, her statements would have been admissible because they preceded arrest. However, based on the specific facts of the case (that is, being questioned by police while in possession of drugs), the court in Collicott determined that the witness's motive to fabricate arose *before* any arrest was made. Collicott thus supports a case-by-case factual inquiry into the motives of the witness at the time of the prior consistent statement.

Finally, to the extent that United States v. Moreno, 94 F.3d 1453, 1455 (10th Cir. 1996), and United States v. Forrester, 60 F.3d 52, 64 (2nd Cir. 1995), may be read to stand for a bright line rule that motive to fabricate necessarily and automatically attaches upon arrest, we decline to adopt such a per se rule. As we have noted, the creation of such a bright line rule would swallow whole the 801(d)(1)(B) exception. See Henderson, 717 F.2d at 139. Moreover, given the variety of motives that may influence an individual's decision to confess, we are convinced that the adoption of a per se rule mistakenly would take all discretion from the trial judge in a fact intensive context calling for just the opposite result -- an individualized and careful calibration of complex fact. We therefore hold that whether a witness had a motive to fabricate when a prior consistent statement was

made is a factual question properly decided by the district court and subject to

reversal only for a clear abuse of discretion. Here, the trial court's unambiguous

finding that Palacios did not have a motive to fabricate when he made his

statements to Detective Gross did not abuse that broad discretion.

B. Eleventh Circuit Pattern Jury Instruction

Prieto also argues that the district court committed plain error in using the

Eleventh Circuit pattern jury instruction regarding codefendants' guilty pleas. The

court instructed the jury in these terms:

> In this case, the Government has called as some of its witnesses people
> named as codefendants in the indictment with whom the Government has
> entered into a plea agreement providing for the possibility of a lesser
> sentence than the witnesses would otherwise be exposed to. Such plea
> bargaining, as it is called, has been approved as lawful and proper, and it is
> expressly provided for in the rules of this Court. However, a witness who
> hopes to gain more favorable treatment may have a reason to make a false
> statement because the witness wants to strike a good bargain with the
> Government. So while a witness of this kind may be entirely truthful while
> testifying, you should consider such testimony with more caution than the
> testimony of other witnesses.

> Of course, the mere fact that a witness has pled guilty to the crimes charged
> in the indictment is not evidence, *in and of itself* of the guilt of any other
> person.

Eleventh Circuit Pattern Jury Instruction 1.2 (emphasis added). Prieto argues that

this instruction misadvised the jury that his codefendants' guilty pleas could be

14

used as substantive evidence of his guilt if considered in conjunction with the other evidence in the case.

Prieto did not object to the use of this instruction at trial and therefore acknowledges that our review is for plain error. See Fed. R. Crim. P. 52(b); 507 U.S. at 730-32; United States v. Kramer, 73 F.3d 1067, 1074 (11th Cir. 1996).

Plain error is, by its terms, error which is so obvious and substantial that it should not have been permitted by the trial court even absent the defendant's timely assistance in detecting it. See United States v. Martinez, 83 F.3d 371, 376 (11th Cir. 1996). For it to be "plain," the error must either have been clear under the law at the time the error was made, or clearly contrary to the law at the time of the appeal. Mitchell, 146 F.3d at 1342-43 (citing Olano, 507 U.S. at 734). In United States v. Abravaya, 616 F.2d 250, 252 (5th Cir. 1980), we considered the jury instruction in question and held that the instruction was not error, plain or otherwise. Many other courts have approved accomplice instructions containing the "in and of itself" language of which Prieto complains. See United States v. Posada-Rios, 158 F.3d 832, 872 (5th Cir. 1998), cert. denied sub nom., Murga v. United States, 526 U.S. 1031, 119 S.Ct. 1280, 143 L. Ed. 2d 373 (1999); see also United States v. Gonzalez-Gonzalez, 136 F.3d 6 (1st Cir. 1998), cert. denied, 524 U.S. 910, 118 S.Ct. 2074, 141 L. Ed. 2d 150 (1998). We are satisfied that the

15

district court did not commit any error, let alone plain error, in giving the Eleventh Circuit Pattern Jury Instruction and accordingly affirm.

**AFFIRMED.**