[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-15294

_____

D.C. Docket No. 1:13-cr-00338-CAP-RGV-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ENKELEON MANATI,
a.k.a. Keli,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 14, 2017)

Before JORDAN and JULIE CARNES, Circuit Judges, and VINSON,[*] District
Judge.

---

[*] The Honorable C. Roger Vinson, United States District Judge for the Northern District of
Florida, sitting by designation.

PER CURIAM:

Enkeleon Manati appeals his convictions on one count of conspiracy to engage in alien smuggling for the purpose of financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I), and alien smuggling for the purpose of financial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2. Mr. Manati argues that the district court improperly admitted several pieces of evidence and improperly limited defense counsel's cross-examination of a key witness. He also asserts that his trial counsel rendered ineffective assistance by failing to object to the government's motion in limine with respect to an immigration judge's credibility finding. Following oral argument and a review of the record, we affirm Mr. Manati's convictions and sentence.

## I

Because we write for the parties, we assume their familiarity with the underlying record and recite only what is necessary to resolve this appeal.

Lush Gjura contacted Mr. Manati for assistance in bringing his nephew, Daniel Gjura, to the United States from Albania. Lush testified that he received Mr. Manati's information from his cousin, Artu Gjura. Mr. Manati agreed to bring Daniel to the United States for $24,000. Mr. Manati instructed Lush to tell Daniel to move to Greece, where he did not need to obtain a visa before entering the United States. Daniel traveled to Greece, where he stayed for approximately

2

two-and-a-half months. Mr. Manati put Daniel in touch with Matrona Koulga, who Mr. Manati had met through an individual named Vassily. Ms. Koulga assisted Daniel with fraudulently obtaining a Greek identification card and passport.

Majlinde Marku testified that Ms. Koulga and two other individuals in Greece helped her come to the United States. She further testified that she was to pay Ms. Koulga approximately $24,000 upon arriving in the United States, and that Ms. Koulga had arranged for all of her travel. Ms. Marku testified that she never spoke to or met with Mr. Manati.

On April 25, 2013, Daniel, Ms. Marku, and Ms. Koulga traveled together from Greece, arriving at the Atlanta airport five days later. Both Daniel and Ms. Marku presented false Greek passports upon arrival and initially lied about their nationality to Customs and Border Patrol officers. Daniel and Ms. Marku were detained, and eventually admitted the truth during a second interview with CBP officers. Daniel and Ms. Marku both applied for asylum, but were denied.

After a three-day trial, the jury convicted Mr. Manati on one count of conspiracy to engage in alien smuggling (Count One) and one count of alien smuggling of Daniel (Count Two). The jury acquitted Mr. Manati on the third count, which charged him with alien smuggling involving Ms. Marku. The district court sentenced Mr. Manati to 24 months' imprisonment as to Count One, and 36 months' imprisonment as to Count Two, to run concurrently.

3

## II

We review the district court's evidentiary rulings for an abuse of discretion. *See United States v. Bradley*, 644 F.3d 1213, 1270 (11th Cir. 2011). But where "a defendant fails to preserve an evidentiary ruling by contemporaneously objecting, our review is only for plain error." *United States v. Turner*, 474 F.3d 1265, 1275 (11th Cir. 2007). To demonstrate plain error, a defendant must show that there was "(1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and if the first three prongs are satisfied, [we] may exercise [our] discretion to correct the error if (4) the error seriously affects the fairness, integrity[,] or public reputation of judicial proceedings." *United States v. Madden*, 733 F.3d 1314, 1320 (11th Cir. 2013) (internal alterations and citation omitted).

## III

Mr. Manati asserts four evidentiary arguments on appeal: (1) the district court plainly erred by admitting prior statements made by Daniel and Ms. Koulga to federal officers in a detention cell at the Atlanta airport; (2) the district court abused its discretion by admitting Ms. Koulga's testimony regarding jail telephone conversations with Vassily and Mr. Manati's wife; (3) the district court abused its discretion by admitting Lush's testimony regarding statements made by his cousin, Artu; and (4) the district court abused its discretion by limiting Daniel's

4

cross-examination regarding the immigration court's finding that Daniel was not credible. We address each claim in turn.

## A

Mr. Manati first argues that the district court improperly admitted prior statements made by Daniel and Ms. Koulga to federal officers after being detained at the airport.

During a second interview with CBP officers, Daniel admitted his real name, that he was Albanian, that his Greek passport was fraudulent, that he had been assisted in Greece by Ms. Koulga and two others, and that he had been assisted by Mr. Manati, who was to be paid approximately $24,000 by his uncle. The second interview was recorded, and a portion of that interview—approximately five to ten minutes—was played for the jury and a transcript from that portion was entered into evidence. The district court also read a cautionary instruction regarding the transcript at the time the recording was played. Mr. Manati did not object to the admission of the recording or the transcript.

The prior statement of Ms. Koulga at issue here was not recorded, but was introduced via Special Agent Martin Kautz. He testified that during her second interview, Ms. Koulga provided him with the phone number of the person she was meeting at the airport, known to her as "Keli." Mr. Manati did not object to this testimony either.

Because Mr. Manati failed to object to the introduction of this evidence, we review for plain error. Under Rule 801(d)(1)(B), "a prior consistent statement by a witness is not hearsay if (1) the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and (2) the statement is consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." *United States v. Prieto*, 232 F.3d 816, 819 (11th Cir. 2000). Prior consistent statements, however, "must have been made before the alleged influence or motive to fabricate arose." *Id.*

Mr. Manati argues only that the statements of Daniel and Ms. Koulga were not admissible as prior consistent statements because there was a motivation for Daniel and Ms. Koulga to fabricate their stories. Specifically, when these statements were made, Daniel and Ms. Koulga had spent the night in custody and understood that they could be prosecuted for their actions.

Statements made after an arrest, however, "are not automatically and necessarily contaminated by a motive to fabricate in order to curry favor with the government"—to hold otherwise "would effectively swallow the rule with respect to prior consistent statements made to government officers[.]" *Id.* at 821 (internal alteration and citation omitted). Indeed, we have identified other, less self-interested, motivations for disclosing past criminal acts, such as one's

6

conscience, religious beliefs, or remorse. *See id.* Because we have declined to draw a bright line rule regarding statements made to government officials following arrest, and given that the question of "whether a witness had a motive to fabricate when prior consistent statements were made is plainly a question of fact to be resolved by the trial court based precisely on the particular circumstances of an individual case," *id.*, we cannot say that the admission of Daniel's and Ms. Koulga's prior statements constituted plain error.

**B**

Mr. Manati next argues that the district court abused its discretion by admitting Ms. Koulga's testimony regarding a series of jail phone calls with Vassily and Mr. Manati's wife. During her testimony, Ms. Koulga explained that she promised Vassily that she would not testify against Mr. Manati in exchange for a $5,000 payment, and that Vassily and Mr. Manati's wife agreed to those terms and paid her the money. She further testified that Mr. Manati was afraid "[b]ecause the lawyer of Mr. Manati [was] screaming don't pay," and "if they find he was involved also, [he] has a problem like me." D.E. 93-3 at 69. Following objection by Mr. Manati's counsel, the government argued that the statements were made by members of the conspiracy, as a continuation of and in furtherance of the conspiracy. The district court made no specific findings, but overruled the objection.

7

Here, even assuming the district court erred by admitting Ms. Koulga's testimony, such error was harmless. *See* Fed. R. Crim. P. 52(a) ("Any error . . . that does not affect substantial rights must be disregarded."); *United States v. Bradley*, 644 F.3d 1213, 1270 (11th Cir. 2011) ("Even if a ruling constitutes an abuse of discretion, it will result in reversal only if the error was not harmless[,] [meaning] there is a reasonable likelihood that it affected the defendant's substantial rights.") (internal alterations and citation omitted). The evidence presented against Mr. Manati was substantial if not overwhelming. *See United States v. Guzman*, 167 F.3d 1350, 1353 (11th Cir. 1999) ("Overwhelming evidence of guilt is one factor that may be considered in finding harmless error.").

Specifically, the government introduced significant evidence to convict Mr. Manati of conspiracy to engage in alien smuggling and the alien smuggling of Daniel, including testimony from Lush Gjura, Amarilda Gjura, Amorido Gjura, and Daniel Gjura that Lush and Mr. Manati had agreed Mr. Manati would bring Daniel to the United States for $24,000; car rental records and airport surveillance footage showing that Mr. Manati met the Gjuras and the Markus at the Atlanta airport (and Mr. Manati stipulated that he was at the airport on the date Daniel arrived); phone records establishing that Lush and Mr. Manati spoke frequently between November of 2012 (when Lush first contacted Mr. Manati) until the date Daniel arrived at the airport with Ms. Koulga and Ms. Marku; phone records

8

corroborating Daniel's story that he called Mr. Manati from Greece to ask why the process was taking so long; Daniel's testimony that he went to Greece on Mr. Manati's instruction and contacted Ms. Koulga through the phone number provided by Mr. Manati; Ms. Koulga's testimony regarding her role in obtaining fraudulent Greek documents and traveling with individuals as needed, and that she was paid by Mr. Manati to do so; and travel records corroborating testimony from Daniel and Ms. Koulga regarding their trip from Greece to Atlanta, as well as Ms. Koulga's testimony regarding other individuals she and Mr. Manati had previously smuggled.

Mr. Manati argues that the evidence against him was not overwhelming because he denied the allegations, he offered five character witnesses, a search of his home yielded no evidence of international alien smuggling, and Ms. Marku and her family testified that they did not know him and he was acquitted of smuggling Ms. Marku. Given the evidence presented, however, we disagree with Mr. Manati's view of the record. We cannot conclude, from the record as a whole, that the admission of Ms. Koulga's statements—even those potentially implicating Mr. Manati in an attempt to bribe a witness—"had a 'substantial influence' on the outcome of the proceeding." *Bradley*, 644 F.3d at 1270.

9

## C

Mr. Manati also argues that the district court abused its discretion by permitting Lush to testify that his cousin Artu gave him Mr. Manati's phone number and told him that Mr. Manati "has helped me before and I think he will help you, too." We agree with the district court's conclusion that this statement was not hearsay because it was not offered to prove the truth of the matter asserted, but rather to explain Lush's subsequent course of conduct in contacting Mr. Manati, seeking his help in bringing Daniel to the United States, and agreeing to pay him $24,000 to do so. *See United States v. Tokars*, 95 F.3d 1520, 1535 (11th Cir. 1996) (statements offered to explain course of conduct were not offered to prove the truth of the matter asserted and therefore were not hearsay). Moreover, Mr. Manati's counsel did not request a curative instruction after the district court ruled on his objection. We therefore see no abuse of discretion in the district court's admission of this statement.

## D

Mr. Manati finally argues that the district court abused its discretion by limiting his trial counsel's cross-examination of Daniel regarding the immigration judge's finding that he was not credible in denying his asylum application. Before trial, the government filed a motion in limine seeking to exclude Mr. Manati from referencing the immigration judge's credibility finding, and Mr. Manati's trial

10

counsel agreed that it was inadmissible. The district court granted the government's motion. During trial, however, Mr. Manati's trial counsel argued that the door had been opened to question Daniel about the credibility finding based upon CBP Officer Corey Lee Chaney's testimony about Daniel's "credible fear" of returning to Albania, and Daniel's testimony that his life was in danger in Albania. Mr. Manati argues on appeal that the immigration judge's credibility finding was admissible under Rule 106 and Rule 608(b).[1]

We have not located any binding precedent on this issue, and there appears to be a split among those circuits that have addressed it. *See, e.g.*, *United States v. Woodward*, 699 F.3d 1188 (10th Cir. 2012) (permitting introduction of credibility finding under Rule 608(b)); *United States v. Cedeno*, 644 F.3d 79 (2d Cir. 2011) (same); *United States v. Dawson*, 434 F.3d 956 (7th Cir. 2006) (same); *United States v. Whitmore*, 359 F.3d 609 (D.C. Cir. 2004) (same). *Contra United States v. Davis*, 183 F.3d 231 (3d Cir. 1999) (concluding that credibility finding is inadmissible extrinsic evidence under Rule 608(b)).

The government relies on our opinions in *United States v. Jones*, 29 F.3d 1549 (11th Cir. 1994), and *United States Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275

---

[1] Rule 106 provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction . . . of any other part . . . that in fairness ought to be considered at the same time." Fed. R. Evid. 106. Rule 608(b) provides that "the court may, on cross-examination, allow [extrinsic evidence to prove specific instances of a witness' conduct to attack or support the witness' character for truthfulness] to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness[.]" Fed. R. Evid. 608(b).

11

(11th Cir. 2001), for the proposition that another court's credibility finding is not admissible at trial. These civil cases, however, are not necessarily dispositive because they do not squarely address the impeachment issue before us. *See Jones*, 29 F.3d at 1554 (determining that another court's judgment containing findings of fact and references to testimony could not be judicially noticed and is not admissible under the Rule 803(8) public records exception); *Tieco*, 261 F.3d at 1286–88 (relying upon *Jones* to conclude that another court's opinion containing judicial findings was inadmissible as hearsay, and that it was unreliable and misleading, causing a danger of prejudice under Rule 403).

But even assuming that the district court abused its discretion by limiting the cross-examination, any error was harmless. *See Bradley*, 644 F.3d at 1270. First, it is important to note that the immigration judge expressly stated that his credibility finding was based on the fact that Daniel had used fraudulent travel documents and provided false testimony to the government when he arrived. The jury heard that same evidence. Moreover, the district court ruled that Mr. Manati's counsel could ask Daniel about his fears and the fact that he had applied for asylum, but was denied. His counsel even responded, "Okay. That is fine. That is close enough." *See* D.E. 93-2 at 116. Because the jury heard that Daniel's asylum claim was denied, we cannot conclude that there is a reasonable likelihood that the inability of Mr. Manati's counsel to question Daniel regarding the credibility finding of the

immigration judge—a finding based upon the same evidence heard by the jury—affected Mr. Manati's substantial rights.[2]

## IV

As for Mr. Manati's related claim that his trial counsel rendered ineffective assistance by failing to object to the government's motion in limine seeking to exclude the immigration judge's credibility finding, he has failed to meet his heavy burden of establishing that his counsel's representation fell below an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 691–92 (1984) (when "a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness" and that this deficiency was prejudicial to the defense.). Specifically, because there is no clear law in this Circuit regarding whether another court's credibility finding is admissible at trial, we cannot say that "no competent counsel" would have declined to object to the government's motion. *See Chandler v. United States*, 218 F.3d 1305, 1315 (11th

---

[2] For the same reason, we do not find that Mr. Manati's Sixth Amendment rights were violated because his counsel had the opportunity to question Daniel about his bias and motivations for testifying for the government. *See United States v. Van Dorn*, 925 F.2d 1331, 1335 (11th Cir. 1991) (a defendant's Sixth Amendment rights are not infringed where "the jury, through the cross-examination that is permitted, [is] exposed to facts sufficient for it to draw inferences relating to the reliability of that witness [and] the cross-examination conducted by defense counsel [enables] him to make a record from which he could argue why the witness might have been biased").

13

Cir. 2000) (en banc) ("[F]or a petitioner to show that [his counsel's] conduct was unreasonable, [he] must establish that no competent counsel would have taken the action that his counsel did take.").

**V**

For the reasons set forth above, Mr. Manati's convictions and sentence are affirmed.

**AFFIRMED**.